**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE:<br><br>IGOR TOVSTANOVSKY and<br>YELENA TOVSTANOVSKY,<br><br>Debtors/Debtors-in-Possession. | CASE NO 26-04966<br><br>CHAPTER 11<br><br>HON. DANIEL R. FINE<br><br>**Re: Docket No. 94** |

**DECLARATION OF BRADLEY LAVENE IN SUPPORT OF FORD CREDIT'S RESPONSE IN OPPOSITION TO DEBTORS' OBJECTION TO ALLOWANCE OF CLAIM FILED BY FORD MOTOR CREDIT COMPANY LLC**

I, Bradley Lavene, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1. I am over twenty-one (21) years of age. I have personal knowledge of, and I am competent to testify to the matters set forth in this Declaration.

2. I am now, and have been at all relevant times, Operations Manager - Dealer Credit for Ford Motor Credit Company LLC ("Ford Credit").

3. In that capacity, and upon review of Ford Credit's books and records concerning Sky Chevrolet LLC also d/b/a Sky Ford of Newhall ("Sky Chevrolet" or the "Dealership"), I make the statements herein in support of Ford Credit's Response in Opposition to Debtors' Objection to the allowance of the Claim filed by Ford Credit in this proceeding.

4. Debtors' Objection contains numerous statements that are false and/or materially misleading.

## BACKGROUND

5. On or about December 5, 2024, Sky Chevrolet executed an Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement (the "Wholesale Agreement"), to induce Ford Credit to extend a wholesale line of credit to Sky Chevrolet to finance its acquisition of new and used motor vehicles for its inventory. A copy of that Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement (the "Wholesale Agreement") is attached as **Exhibit 1**.

6. Amounts advanced by Ford Credit pursuant to the Wholesale Agreement are called "Advances." *See* Exhibit A, at ¶ 1.

7. Pursuant to the Wholesale Agreement, Sky Chevrolet agreed to "pay to Ford Credit, upon demand, the unpaid balance (or so much thereof as may be demanded) of all Advances plus Ford Credit's interest and flat charges with respect thereto[.]" *Id.* at ¶ 3.

8. In exchange for the financing provided under the Wholesale Agreement, Sky Chevrolet granted Ford Credit a security interest in, among other collateral, the motor vehicles financed, their proceeds, any vehicle accessories or replacement parts, any rebates or refunds owed to Sky Chevrolet, and any "accounts, instruments, chattel paper, general intangibles, contract rights documents and supporting obligations arising from the disposition" of the same. *Id.* at ¶ 4.

9. Ford Credit's blanket security interest over essentially all of the Dealership's physical, non-realty assets was further confirmed by the Dealership's Security Agreement with Ford Credit, a copy of which is attached as **Exhibit 2**.

10. Under the Wholesale Agreement, Sky Chevrolet also agreed, at all times, to maintain insurance on the collateral that was subject to Ford Credit's security interest

and to keep the vehicle inventory and related "merchandise" collateral free of any other liens or encumbrances. Exhibit A at ¶¶ 5, 6.

11. Events of default under the Wholesale Agreement included, without limitation, circumstances in which Sky Chevrolet:

(a) Fails to promptly pay any amount owing to Ford Credit as and when the same becomes due and payable, or

(b) Fails to duly observe or perform any other obligation secured by the Wholesale Agreement, or

(c) Makes any false or misleading statement in any material respect to Ford Credit, or

(d) Institutes a bankruptcy, insolvency, or receivership proceeding, or has any such proceeding instituted against it or its property.

*Id.* at ¶ 9.

11. Upon default, Ford Credit was entitled to accelerate, and declare immediately due and payable, any or all of the Advances, plus accrued interest and flat charges, and take immediate possession of all property in which it has a security interest. *Id.*

12. In the event that Ford Credit was required to resort to legal process to enforce its rights under the Wholesale Agreement, the Dealership agreed that it must "pay reasonable attorneys' fees and legal expenses incurred by Ford Credit in connection with the repossession and sale of any such property." *Id.*

13. In addition, under the Wholesale Agreement, Ford Credit also had the right "from time to time and at all reasonable times to examine, appraise and verify the existence and condition of all merchandise, documents, commercial or other paper and other property in which Ford Credit has or has had any title, title retention, lien, security or other interests, and all of Dealer's books and records in any way relating to its business." *Id.* at ¶ 8.

14. Debtor Yelena Tovstanovsky was, and remains, a guarantor of the Dealership's indebtedness. A copy of her Continuing Guaranty, dated December 10, 2024, is attached as **Exhibit 3**.

15. Debtor Yelena Tovstanovsky provided the Continuing Guaranty for the express purpose of inducing Ford Credit "to make loans to and/or make advances" under the Wholesale Agreement, and "to purchase or otherwise acquire retail installment sale contracts, conditional sale contracts, chattel mortgages, or other security instruments or to otherwise extend credit to or do business with" the Dealership. *Id.*

16. Under the Continuing Guaranty, Debtor Yelena Tovstanovsky "unconditionally" agreed:

> (a) to guarantee that the Dealership "will fully, promptly, and faithfully perform, pay and discharge all [of the Dealership's] present and future obligations to [Ford Credit]";
>
> (b) "without Ford Credit first having to proceed against [the Dealership] … to pay on demand all sums due and to become due to [Ford Credit] from [the Dealership] and all losses, costs, attorney's fees or expenses which [Ford Credit] may suffer by reason of [the Dealership's] default"; and
>
> (c) "to be bound by and on demand to pay any deficiency established by a sale of paper or security held with or without notice to [her]; together with a reasonable attorney's fee (15% if permitted by law) if placed with an attorney for collection from [him]." *Id.*

17. During the relevant timeframe, Debtors Igor and Yelena were also owners/operators of a separate Ford and Jeep dealership located in Center Point, Iowa ("Sky Center Point"), with financing for that dealership provided by Stellantis.

**SKY CHEVROLET DEFAULTS AND**
**FORD CREDIT EXERCISES ITS CONTRACTUAL RIGHTS**

18. On February 23, 2026, Ford Credit was contacted by personnel from Stellantis who informed Ford Credit that Stellantis had discovered evidence of double-flooring at Sky Center Point, and that a number of vehicles in inventory at that location appeared to be double-floored with both Stellantis and Ford Credit.

19. Double-flooring, which is a violation of the dealership's Wholesale Agreement and Security Agreement with Ford Credit, occurs when a dealer floors a vehicle with one lender (thus identifying that vehicle as available collateral for the resulting loan from that lender) and then subsequently floors the same vehicle with another lender (thus also identifying that vehicle as available collateral for the second loan).

20. Stellantis provided Ford Credit with a list of vehicles that Stellantis had floorplanned for Sky Center Point, which allowed Ford Credit to compare that list to the list of vehicles floorplanned by Ford Credit at Sky Chevrolet.

21. That comparison revealed that Sky Chevrolet had double-floored eighty-one (81) vehicles, for which Sky Chevrolet owed corresponding indebtedness of $3.7 million to Ford Credit by Sky Chevrolet (49 new vehicles and 32 used vehicles).

22. That comparison, and a review of Ford Credit's records, also revealed that Sky Chevrolet had falsely represented to Ford Credit that certain vehicles were in the inventory of Sky Chevrolet and/or unencumbered, so that Ford Credit would advance additional floorplan lending to Sky Chevrolet.

23. Sky Chevrolet has admitted that it had double-floored those vehicles, and provided a file confirming both its double-flooring of those vehicles.

24. Ford Credit immediately ordered an emergency audit of the vehicle inventory of Sky Chevrolet.

25. During an audit of a dealership's vehicle inventory, representatives of Ford Credit physically inspect and reconcile the dealership's physical inventory (*i.e.*, the vehicles on the dealer's lot) with the list of vehicles on the dealer's floorplan (*i.e.*, the list of vehicles in its inventory that are financed by Ford Credit).

26. In the event that vehicles listed on the dealer's floorplan have been sold, or are not available for inspection, representatives of Ford Credit verify the sales dates (or other locations) of the vehicles that are not present, collect any payments that may be due as of the date of the audit (typically via electronic funds transfer initiated by the dealership to Ford Credit), and report back to Ford Credit sales dates on other vehicles for which payment may not yet be due on the date of the audit (so that Ford Credit can follow with the dealership for payments due on those vehicles).

27. The emergency audit performed on behalf of Ford Credit revealed that Sky Chevrolet was "out of trust" with Ford Credit – having sold multiple vehicles, on which it owed a total of over $1.2 million to Ford Credit (including nine (9) of the double-floored vehicles), without remitting payment to Ford Credit for the amounts that were due to Ford Credit upon the sale of those vehicles.

28. Double-flooring vehicles and selling vehicles out of trust are both violations of Sky Chevrolet's agreements with Ford Credit, and constitute defaults under the Wholesale Agreement and Security Agreement.

29. On or about February 25, 2026, Ford Credit therefore demanded that Debtor Yelena Tovstanovsky pay, pursuant to her Continuing Guaranty, the $4,711,745.66

that was then due and owing by Sky Chevrolet to Ford Credit as a result of its double-flooring and other payment defaults (the "First Demand Letter"). A copy of the First Demand Letter is attached as **Exhibit 4**.

30. On or about February 27, 2026, after Ford Credit accelerated all amounts due from Sky Chevrolet, Ford Credit demand that Debtor Yelena Tovstanovsky pay, pursuant to her Continuing Guaranty, the $6,644,232.94 that was then due and owing by Sky Chevrolet to Ford Credit (the "Second Demand Letter"). A copy of the Second Demand Letter is attached as **Exhibit 5**.

31. Despite those demands, Debtor Yelena Tovstanovsky has so far failed and refused to pay the amounts due to Ford Credit as a result of the defaults by Sky Chevrolet.

32. Because the Dealership refused to surrender Ford Credit's collateral to Ford Credit for liquidation, Ford Credit was forced to file Writs of Replevin in the Iowa state courts to recover its Collateral.

33. The Dealership stopped operating shortly after Orders granting those Writs of Replevin were obtained.

**FALSE AND MISLEADING STATEMENTS IN THE OPPOSITION**

34. After Ford Credit learned of the double-flooring at Sky Chevrolet, Ford Credit's Business Development Manager, Nathan Courtney, went to the dealerships and took possession of the keys and titles for vehicles in the Dealership's inventory – because those keys and titles are themselves a part of Ford Credit's collateral under both the Wholesale Agreement and the Security Agreement.

35. It is Ford Credit's standard practice to take possession of keys and titles when a default of the type that occurred at Sky Chevrolet is discovered.

36. Ford Credit did not, contrary to Debtors' claims, agree to "return" the keys and titles to the defaulting dealership "the following morning."

37. Ford Credit does typically have a representative return to the dealership with the keys and titles in their possession so that the dealership may continue to operate and sell vehicles, but Ford Credit does not return physical possession of keys and titles unless and until the dealership is able to cure the default and other criteria are met.

38. In the case of Sky Chevrolet, a Ford Credit representative was present at the Dealership each day that it continued operating, with the keys and titles in their possession, so that the Dealership could continue to sell vehicles and Ford Credit could ensure that it would receive payment for any vehicles sold.

39. Sky Chevrolet may have requested that Ford Credit return possession of keys and titles to it, but Ford Credit is under no obligation to do so, and Sky Chevrolet was ultimately unable to cure its defaults and did not repay amounts owed for the vehicles it had double-floored or sold out of trust.

40. The other actions that Debtors complain about were also taken pursuant to Ford Credit's contractual rights, and particular its rights upon the Dealership's defaults.

41. To the extent that Debtors claim that Sky Chevrolet proposed a so-called "work-out plan" and "cash flow budget," that proposal was illusory, at best.

42. Notably, Debtors fail to advise the Court that Sky Chevrolet's alleged work-out proposal made no provision whatsoever for repayment of the $3.7 million that Sky Chevrolet owed to Ford Credit for vehicles that were double-floored with Stellantis and as to which Stellantis had the priority security interest.

43. The proposal did claim that Sky Chevrolet could return to profitability with continued support from Ford Credit and Stellantis (*i.e.*, continued floorplan lending, in spite of the Dealership's defaults), but only projected a potential Sky Chevrolet profit of approximately $1.2 million at the end of 12 months.

44. In other words, Sky Chevrolet's "work-out" proposal required that Ford Credit continue to provide it with financing, despite the dealership having double-floored vehicles and sold vehicles out of trust (and without paying amounts due to Ford Credit for those vehicles). The proposal was also based on an unsupported assumption that Sky Chevrolet would be profitable after 12 months – without any assurance that Sky Chevrolet would be able to repay the $3.7 million that it owed to Ford Credit for vehicles no longer in Sky Chevrolet's inventory and no longer available for recovery by Ford Credit as secured collateral.

45. Even under the most optimistic view of that proposal, and assuming that it would have both produced the projected profit and that every dollar of that projected profit went toward repayment of such amounts, Ford Credit would have been required to wait more than 3 years for full repayment of the $3.7 million then owed by Sky Chevrolet (assuming, of course, that the dealership did not commit any additional defaults).

46. It is therefore incorrect for Debtors to now claim there was ever any realistic "work-out" proposal on the table.

47. To the extent that Debtors state that the Dealership and Alex Tovstanovsky "cooperated" with Ford Credit, and "permitted" Ford Credit "to retain their collateral and to occupy the business premises so as to allow them to liquidate and pay their respective claims," that statement is once again misleading.

48. First, as already discussed above, Ford Credit had a contractual right to retain keys and titles and to recover its vehicle collateral for liquidation.

49. Second, the Dealership and Alex Tovstanovsky did not surrender the vehicle collateral to Ford Credit, despite Ford Credit's request that the Dealership do so – Ford Credit had to file petitions for Writs of Replevin in order to obtain Orders permitting it to take possession of its collateral.

50. This necessarily increased the time required to obtain possession of that collateral and the expense of doing so.

51. Alex Tovstanovsky's "analysis of the value of the vehicles" that secured Ford Credit's collateral is likewise false and misleading.

52. Alex Tovstanovsky's analysis (Exhibit A to the Objection) is false because it lists at least 84 vehicles as being available to Ford Credit to liquidate when, in fact, those vehicles were either: (a) sold out of trust (meaning that no vehicle was available to Ford Credit to liquidate); or (b) double-floored, with Stellantis having priority (again meaning that no vehicle was available to Ford Credit to liquidate).

53. Specifically Alex Tovstanovsky's analysis lists nine vehicles as allegedly available to Ford Credit that were, in fact, sold out of trust and/or double-floored with Stellantis (with Stellantis having priority) – which means that Ford Credit never had those vehicles available to liquidate against the amounts owed to it by Sky Chevrolet. Those vehicles included:

| VIN | Make | Model | Year | Alex's "KBB Fair Market Value"[1] | Actual Value Available to Ford Credit |
|---|---|---|---|---|---|
| 1FMDE7BH4SLB60720 | FORD | BRONCO | 2025 | $50,535 | $0 |
| 1FTFW1E81MKD39700 | FORD | F-150 | 2021 | $35,382 | $0 |
| 3GCPKBEKXSG364455 | CHEVROLET | SILVERADO | 2025 | $39,837 | $0 |
| ZFBHRFBB0M6V74548 | RAM | PROMASTER CITY | 2021 | $16,058 | $0 |
| 1C4PJXDG8RW349218 | JEEP | WRANGLER | 2024 | $29,370 | $0 |
| 3C63R3HL0RG242032 | RAM | 3500 | 2024 | $47,590 | $0 |
| 3GKALMEG7RL379110 | GMC | TERRAIN | 2024 | $22,941 | $0 |
| 5N1DR3BC5SC235863 | NISSAN | PATHFINDER | 2025 | $26,153 | $0 |
| KNDJ23AU6P7856387 | KIA | SOUL | 2023 | $14,760 | $0 |

54. In other words, Alex Tovstanovsky's purported analysis claims that Debtors should get credit for $282,626 in alleged (but illusory) vehicle "value" for vehicles that were never available to Ford Credit to liquidate.

---

[1] The "values" listed in this table (and the additional tables below) represent my best effort to read and relate the values set forth in Exhibit A to the Objection, a number of which are illegible or nearly illegible in the filed copy of that Exhibit.

55. Alex Tovstanovsky's analysis also includes forty-one (41) vehicles as being available to Ford Credit, which were subject to a first-priority security interest in favor of Ford Credit, ***but which Sky Chevrolet had already sold out of trust prior to the Petition date***. In other words, his analysis claims "credit" for vehicles that simply weren't there, and could not be liquidated by Ford Credit to reduce the amounts owed by Sky Chevrolet as a result of those sales out of trust:

| VIN | Make | Model | Year | Alex's "KBB Fair Market Value" | Actual Value Available to Ford Credit |
|---|---|---|---|---|---|
| 1C4GJXAN7MW615095 | JEEP | WRANGLER | 2021 | $18,030 | $0 |
| 1C4HJWDGXGL121668 | JEEP | WRANGLER UNLIMI | 2016 | $14,470 | $0 |
| 1FMCU9G63NUC04190 | FORD | ESCAPE | 2022 | $41,485 | $0 |
| 1FMCU9G64NUB99467 | FORD | ESCAPE | 2022 | $22,230 | $0 |
| 1FMCU9G67NUB87961 | FORD | ESCAPE | 2022 | $20,190 | $0 |
| 1FMJK1JT2MEA01460 | FORD | EXPEDITION | 2021 | $24,840 | $0 |
| 1FMJU1JT4HEA73020 | FORD | EXPEDITION | 2017 | $20,920 | $0 |
| 1FMSK8DH1PGA07781 | FORD | EXPLORER | 2023 | $20,150 | $0 |
| 1FT7W2BT8GEB94371 | FORD | F-250 | 2016 | $18,290 | $0 |
| 1FTBR1Y85RKA96708 | FORD | TRANSIT | 2024 | $30,080 | $0 |
| 1FTEW1EP1PFA74521 | FORD | F-150 | 2023 | $33,735 | $0 |
| 1FTFW5LD2RFA81730 | FORD | F-150 | 2024 | $53,115 | $0 |
| 1GC4YSEY1RF201257 | CHEVROLET | SILVERADO | 2024 | $45,249 | $0 |
| 1GCGTCEN2M1297221 | CHEVROLET | COLORADO | 2021 | $27,180 | $0 |
| 1GCHSBE39F1149487 | CHEVROLET | COLORADO | 2015 | $14,855 | $0 |
| 1GCRKSE76CZ214008 | CHEVROLET | SILVERADO | 2012 | $14,260 | $0 |
| 1GKKNMLS5PZ256241 | GMC | ACADIA | 2023 | $31,600 | $0 |
| 1GKKNUL47PZ242567 | GMC | ACADIA | 2023 | $24,500 | $0 |
| 1GKS2GKD5MR127795 | GMC | YUKON XL | 2021 | $37,834 | $0 |
| 2C3CDXBG1PH531190 | DODGE | CHARGER | 2023 | $20,170 | $0 |
| 2C4RC1BGXTR154191 | CHRYSLER | PACIFICA | 2026 | $37,790 | $0 |

| | | | | | |
|---|---|---|---|---|---|
| 2FMPK4J99PBA00452 | FORD | EDGE | 2023 | $21,760 | $0 |
| 3C6UD5GL0CG116812 | DODGE | RAM 2500 | 2012 | $39,570 | $0 |
| 3C6UR5JJXNG416255 | RAM | 2500 | 2022 | $39,760 | $0 |
| 3CZRU6H58KM740324 | HONDA | HR-V | 2019 | $16,180 | $0 |
| 3FMCR9B65NRD09149 | FORD | BRONCO SPORT | 2022 | $13,780 | $0 |
| 3GCUKREC2HG145809 | CHEVROLET | SILVERADO | 2017 | $27,210 | $0 |
| 3GNAXUEG8PS128297 | CHEVROLET | EQUINOX | 2023 | $18,680 | $0 |
| 3GNAXUEG9RS193680 | CHEVROLET | EQUINOX | 2024 | $20,440 | $0 |
| 3GNKBCR42RS128568 | CHEVROLET | BLAZER | 2024 | $27,390 | $0 |
| 3VVSX7B24RM015415 | VOLKSWAGEN | TAOS | 2024 | $16,684 | $0 |
| 5N1BT3BA5PC763644 | NISSAN | ROGUE | 2023 | $20,298 | $0 |
| 5N1BT3BB1SC764288 | NISSAN | ROGUE | 2025 | $23,235 | $0 |
| 5TDFZRBH6MS107807 | TOYOTA | HIGHLANDER | 2021 | $30,092 | $0 |
| JA4ARUAU6RU019445 | MITSUBISHI | OUTLANDER SPORT | 2024 | $16,786 | $0 |
| JN8BT3BB5PW478541 | NISSAN | ROGUE | 2023 | $20,585 | $0 |
| JTEVB5BR8S5008020 | TOYOTA | 4RUNNER | 2025 | $54,092 | $0 |
| KL4AMDSL6RB073697 | BUICK | ENCORGE GX | 2024 | $21,737 | $0 |
| KL4CJASB2GB610697 | BUICK | ENCORE | 2016 | $18,180 | $0 |
| KL79MRSL0SB057116 | CHEVROLET | TRAILBLAZER | 2025 | $22,149 | $0 |
| ZACNJDB18PPP65023 | JEEP | RENEGADE | 2023 | $18,590 | $0 |

56. As a result, Alex Tovstanovsky's purported analysis claims that Debtors should also get credit for an additional $1,057,811 in alleged (but illusory) vehicle "value" for these additional SOT vehicles that were never available to Ford Credit to liquidate.

57. Alex Tovstanovsky's analysis also lists dozens of vehicles as being available to Ford Credit to liquidate when, in fact, those vehicles were both double-floored and were subject to a first-priority security interest in favor of Stellantis.

58. Specifically, Alex Tovstanovsky's analysis lists an additional thirty-four (34) vehicles as being available to Ford Credit that were not – because Stellantis had a first-priority security interest as to those vehicles:

| VIN | Make | Model | Year | Alex's "KBB Fair Market Value" | Actual Value Available to Ford Credit |
|---|---|---|---|---|---|
| 1FMDE7BH5SLB43795 | FORD | BRONCO | 2025 | $48,040 | $0 |
| 1FMEE7BH4SLB79241 | FORD | BRONCO | 2025 | $53,355 | $0 |
| 1FMEE8BP0SLB72204 | FORD | BRONCO | 2025 | $57,795 | $0 |
| 1FMEE8BP1SLB73099 | FORD | BRONCO | 2025 | $57,495 | $0 |
| 1FMEE9BP4SLB71708 | FORD | BRONCO | 2025 | $68,170 | $0 |
| 1FMUK8DH2TGA61254 | FORD | EXPLORER | 2026 | $51,310 | $0 |
| 1FMUK8HH8TGA51712 | FORD | EXPLORER | 2026 | $58,795 | $0 |
| 1FMUK8KH2TGA10873 | FORD | EXPLORER | 2026 | $53,770 | $0 |
| 1FMWK8GC6TGA21638 | FORD | EXPLORER | 2026 | $62,355 | $0 |
| 1FT6W3LUXSWG27460 | FORD | F-150 | 2025 | $74,595 | $0 |
| 1FTER4HH7SLE58259 | FORD | RANGER | 2025 | $45,120 | $0 |
| 1FTFW5L55SFC73688 | FORD | F-150 | 2025 | $71,645 | $0 |
| 1FTFW5L82SFC53358 | FORD | F-150 | 2025 | $71,705 | $0 |
| 1FTFW5L86SKD62901 | FORD | F-150 | 2025 | $69,205 | $0 |
| 3FMCR9BN5SRF72776 | FORD | BRONCO SPORT | 2025 | $37,800 | $0 |
| 3FTTW8H37SRB40719 | FORD | MAVERICK | 2025 | $34,230 | $0 |
| 1FT8W3BM6TED37752 | FORD | F-350 | 2026 | $94,515 | $0 |
| 1C4PJXAG2RW343256 | JEEP | WRANGLER | 2024 | $28,270 | $0 |
| 1C4SJSGP9PS574387 | JEEP | GRAND WAGONEER | 2023 | $62,800 | $0 |
| 1C6RR7LG5RS143582 | RAM | 1500 CLASSIC | 2024 | $30,761 | $0 |
| 1C6RRFGG4RN215889 | RAM | 1500 | 2024 | $31,411 | $0 |
| 1C6SRFMP8SN748663 | RAM | 1500 | 2025 | $40,930 | $0 |
| 1C6SRFMP9SN748655 | RAM | 1500 | 2025 | $43,928 | $0 |
| 1FMEE5BP1PLB10204 | FORD | BRONCO | 2023 | $42,630 | $0 |
| 1G1ZD5ST6RF141111 | CHEVROLET | MALIBU | 2024 | $18,370 | $0 |
| 2C3CDBCK7SR547161 | DODGE | CHARGER | 2025 | $33,810 | $0 |

| | | | | | |
|---|---|---|---|---|---|
| 3C63R3CL6RG190803 | RAM | 3500 | 2024 | $48,900 | $0 |
| 3C63R3CLXRG229490 | RAM | 3500 | 2024 | $47,050 | $0 |
| 3C63R3EL7NG286608 | RAM | 3500 | 2022 | $49,000 | $0 |
| 5N1BT3BA7PC787900 | NISSAN | ROGUE | 2023 | $20,598 | $0 |
| 5N1BT3BA7PC835184 | NISSAN | ROGUE | 2023 | $20,606 | $0 |
| JF2SKACC1RH413771 | SUBARU | FORESTER | 2024 | $26,344 | $0 |
| 1FMCU9MN8TUA14443 | FORD | ESCAPE | 2026 | $35,625 | $0 |
| 1FMDE7BH3SLB71403 | FORD | BRONCO | 2025 | $49,460 | $0 |

59. As a result, Alex Tovstanovsky's purported analysis claims that Debtors should also get credit for an additional $1,640,393 in alleged (but illusory) vehicle "value" for double-floored vehicles that were never available to Ford Credit to liquidate.

60. Together, Alex Tovstanovsky's analysis attributes $2,980,830 in illusory "value" to these three categories of vehicles - ***none of which were available to Ford Credit to liquidate***.

61. To the extent Alex Tovstanovsky's analysis purportedly relied on "Kelly Blue Book" value, that reliance is also misleading.

62. Kelly Blue Book values have little relevance to the values that can be obtained when vehicle collateral has to be liquidated after a dealership defaults.

63. Ford Credit has had extensive experience with liquidating new and used vehicle collateral over the years, particularly through auction.

64. It is Ford Credit's experience that, on average, there is a five percent loss on sale of all current model year vehicles, a twenty percent loss on all prior model year vehicles, and a thirty percent loss on all used vehicles.

65. Kelly Blue Book values fail to capture this reality, as does Alex's analysis based upon those purported values.

66. Accordingly, not only does Alex Tovstanovsky's analysis include value for collateral that was never available to Ford Credit to liquidate, it also significantly overstates the expected proceeds that Ford Credit expects to realize as a result of the liquidation of the vehicle collateral that it was able to recover through replevin.

67. Finally, to the extent Debtors claim that they have not received any updates on the liquidation of the vehicle collateral, Ford Credit has sent all notices of sale required under the UCC – both to the Dealership entity and to its guarantors, including Debtor Yelena Tovstanovsky. Copies of those notices are attached as **Exhibit 6**.

Bradley Lavene

# EXHIBIT 1

FORD CREDIT

# AUTOMOTIVE WHOLESALE PLAN
# APPLICATION FOR WHOLESALE FINANCING
# AND SECURITY AGREEMENT

Date: 12/5, 2024

To: Ford Motor Credit Company LLC, a Delaware limited liability company (hereinafter called "Ford Credit")

The undersigned SKY CHEVROLET LLC, a limited liability company organized under the laws of or registered in the state of Iowa (hereinafter called "Dealer"), primarily managing its business from its chief executive office located at: 7300 28th Ave, Newhall, Iowa 52315 hereby requests Ford Credit to establish and maintain for Dealer a wholesale line of credit to finance new, used and demonstrator motor vehicles, trucks, truck-tractors, trailers, semi-trailers, buses, mobile homes, motor homes, other vehicles and farm and industrial implements and appliances and other inventory, equipment and goods (hereinafter called the "Merchandise") for Dealer under the terms of the applicable Ford Credit Wholesale Plan as set forth in the Automotive Finance Plan provided to dealer, or any subsequent edition or modification thereof and all policies, terms and conditions announced by Ford Credit in writing from time to time (hereinafter called the "Plan") and in connection therewith to make advances to or on behalf of Dealer, purchase installment sale contracts evidencing the sale of Merchandise to Dealer by the manufacturer, distributor or other seller thereof, or otherwise extend credit to Dealer. In consideration thereof Dealer hereby agrees as follows:

**1. Advances by Ford Credit**
Ford Credit at all times shall have the right in its sole discretion to determine the extent to which, the terms and conditions on which, and the period for which it will make such advances, purchase such contracts or otherwise extend credit to Dealer (hereinafter called an "Advance" (individually) or "Advances" (collectively)), under the Plan or otherwise. Ford Credit may, at any time and from time to time, in its sole discretion, establish, rescind or change limits or the extent to which financing accommodations under the Plan will be made available to Dealer. In connection with the purchase of any such contract and/or other extension of credit, Ford Credit may pay to any manufacturer, distributor or other seller of the Merchandise the invoice or contract amount therefore and be fully protected in relying in good faith upon any invoice, contract or other advice from such manufacturer, distributor or seller that the Merchandise described therein has been ordered or shipped to Dealer and that the amount therefore is correctly stated. Any such payment made by Ford Credit to such manufacturer, distributor or seller, and any loan or other extension of credit made by Ford Credit directly to Dealer with respect to Merchandise of any type held by Dealer for sale, shall be an Advance made by Ford Credit hereunder and, except with respect to any Advance that is a purchase of an installment sale contract, shall be repayable by Dealer in accordance with the terms hereof. All rights of Ford Credit and obligations of Dealer with respect to Advances hereunder that constitute the purchase by Ford Credit of an installment sale contract shall be pursuant to the provisions of such contract.
From time to time Ford Credit shall furnish statements to Dealer of Advances made by Ford Credit hereunder. Dealer shall review the same promptly upon receipt and advise Ford Credit in writing of any discrepancy therein. If Dealer shall fail to advise Ford Credit of any discrepancy in any such statement within ten calendar days following the receipt thereof by Dealer, such statement shall be deemed to be conclusive evidence of Advances made by Ford Credit hereunder unless Dealer or Ford Credit establishes by a preponderance of evidence that such Advances were not made or were made in different amounts than as set forth in such statement.

**2. Interest and Service and Insurance Flat Charges**
Each Advance made by Ford Credit hereunder shall bear interest at the rates established by Ford Credit from time to time for Dealer, except that any amount not paid when due hereunder shall bear interest at a rate that is 4 percentage points higher than the current pre-default rate up to the maximum contract rate permitted by the law of the state where Dealer maintains its business as set out above. In addition to interest, the financing of Merchandise under the Plan shall be subject to service and insurance flat charges established by Ford Credit from time to time for Dealer.
Ford Credit shall advise Dealer in writing from time to time of any change in the interest rate and service and insurance flat charges applicable to Dealer and the effective date of such change. Such change shall not become effective, however, if Dealer elects to terminate this Agreement and pay to Ford Credit the full unpaid balance outstanding under Dealer's wholesale line of credit and all other amounts due or to become due hereunder in good funds within ten calendar days after the receipt of such notice by Dealer.

**3. Payments by Dealer**
The aggregate amount outstanding from time to time of all Advances made by Ford Credit hereunder shall constitute a single obligation of Dealer, notwithstanding Advances are made from time to time. Unless otherwise provided in the promissory note, installment sale contract, chattel paper, security agreement or instrument evidencing the same from time to time, Dealer shall pay to Ford Credit, upon demand, the unpaid balance (or so much thereof as may be demanded) of all Advances plus Ford Credit's interest and flat charges with respect thereto, and in any event, without demand, the unpaid balance of the Advance made by Ford Credit hereunder with respect to an item of the Merchandise at or before the date on which the same is sold, leased or placed in use by Dealer. Dealer shall also pay to Ford Credit, upon demand, the full amount of any rebate, refund or other credit received by Dealer with respect to the Merchandise. If the promissory note, installment sale contract, chattel paper, security agreement or instrument evidencing an Advance or Advances is payable in one or more installments, Ford Credit may from time to time in its sole discretion, extend any installment due thereunder on a month-to-month basis, and, except as provided below or in any installment sale contract, Ford Credit's failure to demand any such installment when due shall be deemed to be a one month extension of the same. Any such extension, however, shall not obligate Ford Credit to grant an extension in the future or waive Ford Credit's right to demand payment when due. Following the sale, lease or use date of an item of the Merchandise, no installment shall be deemed extended without Ford Credit's specific written consent, and Dealer agrees to pay the same, as required, without demand.

Ford Credit may, for administrative convenience, classify financing accommodations hereunder into "lines" such as "new" and "used" (the line(s) primarily associated with new Merchandise are hereinafter each called a "New Line"). If Dealer (or someone acting on the Dealer's behalf) tenders all amounts due under this agreement on a New Line for the purpose of refinancing the Merchandise through another finance source (herein after called a "Prepayment"), the Dealer will pay a prepayment fee for each New Line prepaid as follows: (1) If the Prepayment occurs on or before the second anniversary date of this agreement, the prepayment fee will equal two percent (2%) of the "New Line Approved Amount." The "New Line Approved Amount" is a dollar amount assigned by Ford Credit to a New Line from time to time used to assist in the administration and monitoring of Advances under the New Line; (2) If the Prepayment

occurs after the second anniversary date, but on or before the third anniversary date, the prepayment fee will equal one and a half percent (1.5%) of the New Line Approved Amount; (3) If the Prepayment occurs after the third anniversary date, but on or before the fourth anniversary date, the prepayment fee will equal one percent (1%) of the New Line Approved Amount; (4) If the Prepayment occurs after the fourth anniversary date, but on or before the fifth anniversary date, the prepayment fee will equal a half percent (.5%) of New Line Approved Amount; or (5) If the Prepayment occurs after the fifth anniversary date, no prepayment fee is due. The ability to collect a prepayment fee as provided herein is integral to the inducement of Ford Credit to extend financing accommodations hereunder to Dealer. Any prepayment fee is due at the time of Prepayment.

**4. Ford Credit's Security Interest**
As security for all Advances now or hereafter made by Ford Credit hereunder, and for the observance and performance of all other obligations of Dealer to Ford Credit in connection with the wholesale financing of Merchandise for Dealer, Dealer hereby grants to Ford Credit a security interest in the Merchandise wherever located now owned or hereafter acquired by Dealer, accessions thereto, accessories and replacement parts therefore, and in the proceeds and products thereof in whatever form, of any sale or other disposition of the Merchandise or other collateral, and in accounts, instruments, chattel paper, general intangibles, contract rights documents and supporting obligations arising from the disposition of the Merchandise or other collateral; and Dealer hereby assigns to Ford Credit, and grants to Ford Credit a security interest in, all amounts that may now or hereafter be payable to Dealer by the manufacturer, distributor or seller of any of the Merchandise by way of rebate or refund of all or any portion of the purchase price thereof. Dealer authorizes Ford Credit to file a financing statement(s) generally describing the Merchandise and other collateral provided hereunder.

**5. Dealer's Possession and Sale of Merchandise**
Dealer's possession of the Merchandise shall be for the sole purpose of storing and exhibiting the same for sale or lease in the ordinary course of Dealer's business. Dealer shall keep the Merchandise brand new and subject to inspection by Ford Credit and free from all taxes, liens and encumbrances, and any sum of money that may be paid by Ford Credit in release or discharge of any taxes, liens or encumbrances on the Merchandise or on any documents executed in connection therewith shall be paid by Dealer to Ford Credit upon demand. Except as may be necessary to remove or transport the same from a freight depot to Dealer's place of business, Dealer shall not use or operate, or permit the use or operation of, the Merchandise for demonstration, hire or otherwise without the express prior written consent of Ford Credit in each case, and shall not in any event use the Merchandise illegally or improperly. Dealer shall not mortgage, pledge or loan any of the Merchandise, and shall not transfer or otherwise dispose of the same except by sale or lease in the ordinary course of Dealer's business. Dealer will not move its place of business. Dealer will not move the Merchandise from the states listed above. Any and all proceeds of any sale, lease or other disposition of the Merchandise by Dealer shall be received and held by Dealer in trust for Ford Credit and shall be fully, faithfully and promptly accounted for and remitted by Dealer to Ford Credit to the extent of Dealer's obligation to Ford Credit with respect to the Merchandise. As used in this paragraph 5, (a) "sale in the ordinary course of Dealer's business" shall include only (i) a bona fide retail sale to a purchaser for his own use at the fair market value of the Merchandise sold and (ii) an occasional sale of such Merchandise to another dealer at a price not less than Dealer's cost of the Merchandise sold, unless such sale is a part of a plan or scheme to liquidate all or any portion of Dealer's business, and (b) "lease in the ordinary course of Dealer's business" shall include only a bona fide lease to a lessee for his own use at a fair rental value of the Merchandise leased.

**6. Risk of Loss and Insurance Requirements**
The Merchandise shall be at Dealer's sole risk of any loss or damage to the same, except to the extent of any insurance proceeds actually received by Ford Credit with respect thereto under insurance obtained by Ford Credit pursuant to the Plan. Dealer shall indemnify Ford Credit against all claims for injury or damage to persons or property caused by the use, operation or holding of the Merchandise and, if requested to do so by Ford Credit, maintain at its own expense liability insurance in connection therewith in such form and amounts as Ford Credit may reasonably require from time to time. In addition, Dealer shall insure each item of the Merchandise that is or may be used for demonstration or operated for any other purpose against loss due to collision, subject in each case to the deductible amounts and limitations set forth in the Plan.

**7. Credits**
All funds or other property belonging to Ford Credit and received by Dealer shall be received by Dealer in trust for Ford Credit and shall be remitted to Ford Credit forthwith. Ford Credit, at all times, shall have a right to offset and apply any and all credits, monies or properties of Dealer in Ford Credit's possession or control against any obligation of Dealer to Ford Credit.

**8. Information Concerning Dealer**
To induce Ford Credit to extend financing accommodations hereunder, Dealer has submitted information concerning itself, its legal name, guarantors, business organization, state of incorporation or registration correct in all respects and that the financial information contained therein and any that may be furnished to Ford Credit from time to time hereafter does and shall fairly present the financial condition of Dealer and any guarantor in accordance with generally accepted accounting principles applied on a consistent basis. Dealer agrees to notify Ford Credit at least 30 days prior to or promptly after receiving knowledge thereof of any merger or material change in its business organization, name, form of organization, state of incorporation or registration, or financial condition or in any information relating thereto previously furnished to Ford Credit. Dealer acknowledges and intends that Ford Credit shall rely, and shall have the right to rely, on such information in extending and continuing to extend financing accommodations to Dealer. Dealer hereby authorizes Ford Credit from time to time and at all reasonable times to examine, appraise and verify the existence and condition of all Merchandise, documents, commercial or other paper and other property in which Ford Credit has or has had any title, title retention, lien, security or other interest, and all of Dealer's books and records in any way relating to its business.

**9. Default**
The following shall constitute an Event of Default hereunder:
(a) Dealer shall fail to promptly pay any amount now or hereafter owing to Ford Credit as and when the same shall become due and payable, or
(b) Dealer shall fail to duly observe or perform any other obligation secured hereby, or
(c) any representation made by Dealer to Ford Credit shall prove to have been false or misleading in any material respect as of the date on which the same was made, or
(d) a proceeding in bankruptcy, insolvency or receivership shall be instituted by or against Dealer or Dealer's property.
Upon the occurrence of an Event of Default Ford Credit may accelerate, and declare immediately due and payable, all or any part of the unpaid balance of all Advances made hereunder together with accrued interest and flat charges, without notice to anyone. In addition, Ford Credit may take immediate possession of all property in which it has a security interest hereunder, without demand or other notice and without legal process. For this purpose and in furtherance thereof if Ford Credit so requests, Dealer shall assemble such property and make it available to Ford Credit at a reasonable convenient place designated by Ford Credit, and Ford Credit shall have the right, and Dealer hereby authorizes and empowers Ford Credit, its agents or representatives, to enter upon the premises wherever such property may be and remove the same. In the event Ford Credit acquires possession of such property or any portion thereof, as hereinbefore provided, Ford Credit may, in its sole discretion (i) sell the same, or any portion thereof, after at least five days' written notice or such notice as required by law, at public or private sale for the account of Dealer, (ii) declare this agreement, all wholesale transactions and Dealer's obligations in connection therewith to be terminated and cancelled and retain any sums of money that may have been paid by Dealer in connection therewith, and (iii) enforce any other remedy that Ford Credit may have under applicable law. Dealer agrees that the sale by Ford Credit of any new

and unused property repossessed by Ford Credit to the manufacturer, distributor or seller thereof, or to any person designated by such manufacturer, distributor or seller, at the invoice cost thereof to Dealer less any credits granted to Dealer with respect thereto and reasonable costs of transportation and reconditioning, shall be deemed to be a commercially reasonable means of disposing of the same. Dealer further agrees that if Ford Credit shall solicit bids from three or more other dealers in the type of property repossessed by Ford Credit hereunder, any sale by Ford Credit of such property in bulk or in parcels to the bidder submitting the highest cash bid therefore also shall be deemed to be a commercially reasonable means of disposing of the same. Dealer understands and agrees, however, that such means of disposal shall not be exclusive and that Ford Credit shall have the right to dispose of any property repossessed hereunder by any commercially reasonable means. Dealer agrees to pay reasonable attorneys' fees and legal expenses incurred by Ford Credit in connection with the repossession and sale of any such property. Ford Credit's remedies hereunder are cumulative and may be enforced successively or concurrently.

**10. General**

Dealer waives the benefit of all homestead and exemption laws and agrees that the acceptance by Ford Credit of any payment after it may have become due or the waiver by Ford Credit of any other default shall not be deemed to alter or affect Dealer's obligations or Ford Credit's right with respect to any subsequent payment or default.

Neither this agreement, nor any other agreement between Dealer and Ford Credit, or between Dealer and any manufacturer, distributor or seller that has been assigned to Ford Credit, nor any funds payable by Ford Credit to Dealer, shall be assigned by Dealer without the express prior written consent of Ford Credit in each case.

Any provision hereof prohibited by any applicable law shall be ineffective to the extent of such prohibition without invalidating the remaining provisions hereof. Except as herein provided, no modification hereof may be made except by a written instrument duly executed by, or pursuant to the express written authority of an executive officer of Ford Credit.

Dealer shall execute and deliver to Ford Credit promissory notes or other evidences of Dealer's indebtedness hereunder, security agreements, trust receipts, chattel mortgages or other security instruments and any other documents which Ford Credit may reasonably request to confirm Dealer's obligations to Ford Credit and to confirm Ford Credit's security interest in the Merchandise financed by Ford Credit under the Plan or in any other property as provided hereunder, and in such event the terms and conditions hereof shall be deemed to be incorporated therein. Ford Credit's security or other interest in any Merchandise shall not be impaired by the delivery to Dealer of Merchandise or of bills of lading, certificates of origin, invoices or other documents pertaining thereto or by the payment by Dealer of any curtailment, security or other deposit or portion of the amount financed. The execution by Dealer or on Dealer's behalf of any document for the amount of any credit extended shall be deemed evidence of Dealer's obligation and not payment thereof. Ford Credit may, for and in the name of Dealer, endorse and assign any obligation transferred to Ford Credit by Dealer and any check or other medium of payment intended to apply upon such obligation. Ford Credit may complete any blank space and fill in omitted information on any document or paper furnished to it by Dealer.

Unless the context otherwise clearly requires, the terms used herein shall be given the same meaning as ascribed to them under the provisions of the Uniform Commercial Code. Section headings are inserted for convenience only and shall not affect any construction or interpretation of this agreement.

This agreement shall be interpreted in accordance with the laws of the state of the Dealer's place of business set out above.

**11. Acceptance and Termination**

Dealer waives notice of Ford Credit's acceptance of this agreement and agrees that it shall be deemed accepted by Ford Credit at the time Ford Credit shall first extend credit to Dealer under the Plan. This agreement shall be binding on Dealer and Ford Credit and their respective successors and assigns and shall bind all persons who become bound as a debtor to this agreement from the date thereof until terminated by receipt of a written notice by either party from the other, except that any such termination shall not relieve party from any obligation incurred prior to the effective date thereof.

SKY CHEVROLET LLC
an Iowa limited liability company
(Dealer's Exact Legal Name)

By: [signature]
ALEX TOVSTANOVSKY, Member

## POWER OF ATTORNEY FOR WHOLESALE

KNOW ALL MEN BY THESE PRESENTS: That the undersigned dealer does hereby make, constitute and appoint the Director of Commercial Risk Management and any other officer or employee of Ford Motor Credit Company LLC, a Delaware limited liability company ("Ford Credit") of Dearborn, Michigan, its true and lawful attorneys with full power of substitution, for and in its name, stead and behalf, to prepare, make, execute, acknowledge and deliver to Ford Credit from time to time promissory notes or other evidences of indebtedness, bearing such rate of interest as Ford Credit may require from time to time, and trust receipts, chattel mortgages and other title retention or security instruments necessary or appropriate in connection with the wholesale financing by Ford Credit of merchandise for the undersigned dealer under the terms of the Ford Credit Automotive Wholesale Plan, and generally to perform all acts and to do all things necessary or appropriate in discharge of the power hereby conferred, including the making of affidavits and the acknowledging of instruments, as if fully done by the undersigned dealer, and the said attorney hereby is further authorized and empowered in the discharge of the power hereby conferred to execute any instruments by means of either a manual, imprinted or other facsimile signature or by completing a printed form to which an imprinted or other facsimile signature is then affixed.

This Power of Attorney is executed by the undersigned dealer to induce Ford Credit to make advances for merchandise to be acquired by the undersigned dealer and recognizes that such advances are made to manufacturers, distributors and other sellers of such merchandise at places other than the undersigned dealer's place of business, and that it is impractical for the undersigned dealer to execute the promissory notes, trust receipts, chattel mortgages and other title retention or security instruments necessary or appropriate in connection with such advances without unduly delaying the delivery of such merchandise to the undersigned dealer. Accordingly, this Power of Attorney may be revoked by the undersigned dealer only by notice in writing addressed to Ford Credit, The American Road, Dearborn, Michigan 48121 by registered mail, return receipt requested, stating an effective date on or after the receipt thereof by Ford Credit.

Dated: 12/5, 2024

SKY CHEVROLET LLC
an Iowa limited liability company
(Dealer's Exact Legal Name)

By: [signature]
ALEX TOVSTANOVSKY, Member

STATE OF IL )
) SS
COUNTY OF LAKE )

On 12/5/2024, before me, the undersigned Notary Public, personally appeared ALEX TOVSTANOVSKY, who acknowledged himself/herself to be a member of SKY CHEVROLET LLC, the grantor of the foregoing Power of Attorney, and that he/she, being authorized so to do, executed the foregoing Power of Attorney for the purposes therein contained, by signing on behalf of the said grantor in the capacity indicated.

IN WITNESS WHEREOF I have hereunto set my hand and official seal.

(Notary Seal)

Debra S Cooper
NOTARY PUBLIC

My commission expires: 10/15/2028

Official Seal
DEBRA S COOPER
Notary Public, State of Illinois
Commission No. 918937
My Commission Expires October 15, 2028

# EXHIBIT 2

# SECURITY AGREEMENT

Date: December 5th, 2024

For a good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned SKY CHEVROLET LLC organized under or registered in the state of Iowa, primarily managing its business from its chief executive office located at 7300 28th Ave, Newhall, Iowa 52315 hereby grants unto Ford Motor Credit Company LLC, a Delaware limited liability company (hereinafter called "Ford Credit"), a security interest in the following types of property wherever located, now owned or hereafter acquired by the undersigned (hereinafter called the "Collateral") and the proceeds and products thereof:

a) All equipment, fixtures, furniture, demonstrators and service vehicles, supplies and machinery and other goods of every kind.

b) All motor vehicles, tractors, trailers, service parts and accessories and other inventory of every kind and any accessions thereto.

c) All accounts, instruments, chattel paper, general intangibles, contract rights, documents and supporting obligations thereto.

Ford Credit may, in the name of the undersigned or otherwise, receive, collect and receipt for the payment of all monies payable with respect to the foregoing accounts, instruments, chattel paper, general intangibles, contract rights, documents, and supporting obligations thereto and give full discharge therefor; endorse any checks, drafts, money orders or instruments for the payment thereof payable to or to the order of the undersigned that may be received by Ford Credit in connection therewith; sue for, settle, adjust and compromise all present and future claims arising thereunder or in connection therewith; sell, assign, pledge or make any other agreement with respect thereto; and exercise all other rights and remedies that the undersigned would have with respect thereto but for this Security Agreement. The undersigned: (1) authorizes Ford Credit to file a financing statement(s) generally describing the Collateral; and (2) will not merge, change its legal organization structure, its state of incorporation or organization, or name without 30 days prior written notice to Ford Credit. Ford Credit may assign its rights hereunder.

If the undersigned is a corporation, limited liability company, or partnership, the undersigned warrants that, having due regard to all restrictions contained in the Articles of Incorporation, Articles of Organization, Partnership Agreement, Charter, Code of Regulations and By-Laws of the undersigned, the undersigned has the power and authority to enter into this Security Agreement in the manner set out herein, and the undersigned has taken all steps necessary to insure that this Security Agreement is legally valid and enforceable in accordance with its terms and conditions.

In the event the undersigned fails to comply with any provision, representation or warranty of any agreement with Ford Credit or shall default on any amount or obligation now or hereafter owing by the undersigned to Ford Credit, Ford Credit shall have, in addition to all other rights and remedies provided by law, the remedies of a secured party under the Uniform Commercial Code including, without limitation, the right to take possession of the Collateral and for this purpose Ford Credit may enter upon the premises where the Collateral may be situated and remove the same therefrom. In the event Ford Credit takes possession of the Collateral, Ford Credit may (with only such notice as required by the Uniform Commercial Code) sell the same at public or private sale or otherwise in such manner and upon such terms as shall appear to Ford Credit to be reasonable and apply the proceeds of such sale or disposition, less the expenses of retaking, holding, preparing for sale and selling the Collateral and reasonable attorney's fees and legal expenses incurred by Ford Credit to the partial or complete satisfaction of any indebtedness or obligation of the undersigned to Ford Credit.

In Witness Whereof, the undersigned hereto has caused these presents to be duly executed as of the day and year first above written.

SKY CHEVROLET LLC
an Iowa limited liability company

By: ______________________________
ALEX TOVSTANOVSKY
Title: Member

**EXHIBIT 3**

# CONTINUING GUARANTY

Date: Dec-10-2024

To: Ford Motor Credit Company LLC

For and in consideration of $1.00 and other good and valuable considerations paid by you to each of us, the receipt and sufficiency of which is each hereby acknowledged, and to induce you to make loans to and/or make advances under your Wholesale Plan to, and to purchase or otherwise acquire retail installment sale contracts, conditional sale contracts, chattel mortgages, or other security instruments or to otherwise extend credit to or do business with:

SKY CHEVROLET LLC
(Dealer's Name)

7300 28th Ave, Newhall, Iowa 52315
(Dealer's Address)

hereinafter called the "Dealer", each of the undersigned Guarantors hereby, jointly and severally, and unconditionally, guaranties to you, your successors or assigns that the Dealer will fully, promptly, and faithfully perform, pay and discharge all Dealer's present and future obligations to you; and agrees, without your first having to proceed against Dealer or to liquidate paper or any security therefor, to pay on demand all sums due and to become due to you from Dealer and all losses, costs, attorney's fees or expenses which you may suffer by reason of Dealer's default; and agrees to be bound by and on demand to pay any deficiency established by a sale of paper or security held with or without notice to us; together with a reasonable attorney's fee (15% if permitted by law) if placed with an attorney for collection from us. Each of us hereby subordinates any sums now or hereafter due to him/her from Dealer to the payment of any sums now or hereafter due you from Dealer (Subordinated indebtedness), and agrees that the undersigned will not, without your prior written consent, demand, take steps for the collection of, or assign, transfer or otherwise dispose of the Subordinated indebtedness or any part thereof or realize upon or enforce any collateral securing the Subordinated indebtedness or any part thereof and will not demand or accept any property of the Dealer as security for the Subordinated indebtedness of any part thereof for so long as the Dealer shall be indebted to you; provided that the following types of payments in reasonable amounts shall not be subject to this Subordination Agreement and may be paid by the Dealer to the undersigned without your prior written consent: (a) regular wage and salary payments for services rendered by the undersigned, (b) reimbursement for ordinary business expenses advanced on behalf of Dealer by the undersigned, or (c) payments for materials or property furnished by the undersigned in the ordinary course of business dealings between the undersigned and the Dealer.

Each of the undersigned hereby assigns, transfers, and sets over unto you all of his/her right, title and interest in and to the Subordinated indebtedness and agrees to execute any additional assignments and instruments you may deem necessary or desirable to effectuate, complete, perfect or further confirm such assignment and transfer; and agrees to hold in trust for and promptly remit to you for application upon any indebtedness now or hereafter owing by the Dealer to you any amount received from the Dealer or any other person on account of the Subordinated indebtedness.

Each of the undersigned Guarantors shall furnish to you such balance sheets, statements of income, expenditure and surplus and other financial statements as you may reasonably require from time to time. In addition, each Guarantor authorizes Ford Credit to obtain consumer reports

or other credit reports as it deems necessary for the origination, review, collection and enforcement of this Guaranty.

This guaranty may be terminated only by notice sent to you by registered mail, stating an effective date after the receipt of such notice by you; but shall continue thereafter as to each of us who has not given such notice, and shall continue as to each of us giving such notice with respect to any transaction with and any obligation of the Dealer incurred prior to the effective date of termination. No termination hereof shall be effected by the death of any of us. Each of us waives notice of acceptance hereof and of presentment, demand, protest and notice of non-payment or protest as to any note or obligation signed, accepted, endorsed or assigned to you by Dealer, and exemptions, rights of dower and homestead laws and any other demands and notices required by law, and we waive all setoffs and counterclaims. You may renew, extend, modify or transfer any obligations of Dealer or its customers or of co-guarantors, may accept partial payments thereon or settle, release, release, compound, compromise, collect or otherwise liquidate any obligation or security therefor in any manner and bid and purchase at any sale without affecting or impairing the obligation of any of us hereunder.

It is contemplated that this is and is intended to be the personal guaranty of payment and performance of each individual who signs this instrument, and any language in connection with any signature indicating a capacity other than personal shall be deemed stricken from and shall not be part of the signature; but this provision shall not apply to the signature of a person who signs as an officer of a corporation which is not the Dealer, and which executes this instrument as its corporate guaranty.

This instrument shall bind our respective heirs, administrators, personal representatives, successors and assigns, and shall inure to your successors and assigns. All of your rights are cumulative and not alternative. Witness our hand(s) and seal(s) the day and year first above written.

Signed by:
Yelena Tovstanovsky
1EABF906B047427...

YELENA TOVSTANOVSKY
4127 Easy Circle
Naperville, IL 60564

Signed by:
E5DF4D208E2F469...

MICHAEL SVOBODA
38 Allen Drive
Hanover, PA 17331

Signed by:
Alex Tovstanovsky
1060545D036C4E3...

ALEX TOVSTANOVSKY
4127 Easy Circle
Naperville, IL 60564

**EXHIBIT 4**

Credit

February 25, 2026

Alex Tovstanovsky
4127 Easy Circle
Naperville, IL 60564

Subject: SKY CHEVROLET LLC
7300 28TH AVE
NEWHALL, IA 52315

This is to advise you that Ford Motor Credit Company LLC (Ford Credit) has demanded payment of $4,711,745.66 from the above named dealer in accordance with the attached letter.

As guarantor of all obligations owing by the above named dealer to Ford Credit, demand is hereby made upon you for payment of the said $4,711,745.66.

This demand for payment is made without prejudice to any other amounts now or hereafter owing by the above named dealer or by you to Ford Credit.

We would appreciate prompt settlement of this account.

Joe Susic
Regional Manager Ford Credit

Attachment

**EXHIBIT 5**

Ford
Credit

February 27, 2026

Alex Tovstanovsky
4127 Easy Circle
Naperville, IL 60564

Subject: SKY CHEVROLET LLC
7300 28TH AVE
NEWHALL, IA 52315

This is to advise that Ford Motor Credit Company (Ford Credit) has demanded payment of $6,644,232.94 from the above named dealer in accordance with the attached letter of demand.

As a guarantor of all obligations owing by Alex Tovstanovsky to Ford Credit, pursuant to a Continuing Guaranty agreement executed by you on December 10, 2024, demand hereby is made upon you for payment of the said $6,644,232.94.

This demand for payment is made without prejudice to any other amounts now or hereafter owing by the above named dealer or by you to Ford Credit.

We expect that you will honor your guaranty obligation to Ford Credit. In that regard, we look forward to your prompt and affirmative response to this demand for payment.

Please be advised that if you fail to honor your guaranty obligation, Ford Credit intends to exercise its remedies pursuant to law and contracts.

Brad Lavene

Brad Lavene
Operations Manager, Dealer Credit

**EXHIBIT 6**

Ford Credit

4/8/2026

TO: Yelena Tovstanovsky
4127 Easy Circle
Naperville, IL 60564

FROM: Ford Motor Credit Company LLC
One American Road
Dearborn, MI 48126

SUBJECT: Notice of Private Sale
Sky Chevrolet LLC

We will sell the vehicles listed in the attached schedule privately sometime after 4/18/2026.

You are entitled to an accounting of the unpaid indebtedness secured by the property that we intend to sell. You may request an accounting by calling us at the telephone number listed above.

FORD MOTOR CREDIT COMPANY LLC
Brad Lavene
OM-DC
719-278-0103

BY: *Brad Lavene*

Enclosure: Vehicle List

| VIN | Make | Model | Year |
|---|---|---|---|
| 1FMDE7BH1SLA85832 | FORD | BRONCO | 2025 |
| 1FTER4HH1TLE02755 | FORD | RANGER | 2026 |
| 1FA6P8CF3T5404072 | FORD | MUSTANG | 2026 |
| 1FMDE8BH0SLB82607 | FORD | BRONCO | 2025 |
| 1FTER4PH5SLE77930 | FORD | RANGER | 2025 |
| 1FMUK8KH6TGA93904 | FORD | EXPLORER | 2026 |
| 1FMWK8GC3TGA11777 | FORD | EXPLORER | 2026 |
| 1FMUK8DHXTGA08625 | FORD | EXPLORER | 2026 |
| 1FMEE8BP9SLB81726 | FORD | BRONCO | 2025 |
| 1FMEE8BP1SLB71255 | FORD | BRONCO | 2025 |
| 1FMUK8JH1TGA93424 | FORD | EXPLORER | 2026 |
| 1FMUK8KH6TGA66024 | FORD | EXPLORER | 2026 |
| 1FTBR2C84TKA24306 | FORD | TRANSIT | 2026 |
| 3FTTW8SA4TRA31935 | FORD | MAVERICK | 2026 |
| 1FMJU1RG1TEA07203 | FORD | EXPEDITION | 2026 |
| 1FTER4LR4TLE03379 | FORD | RANGER | 2026 |
| 1FTER4KP3TLE05074 | FORD | RANGER | 2026 |
| 1FMDE8BH0SLB82476 | FORD | BRONCO | 2025 |
| 3FMCR9BN3SRF70525 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9BN2SRF82262 | FORD | BRONCO SPORT | 2025 |
| 1FMUK8HH7TGA54326 | FORD | EXPLORER | 2026 |
| 3FTTW8J38TRA22349 | FORD | MAVERICK | 2026 |
| 1FTFW3L87RKF65665 | FORD | F-150 | 2024 |
| 1FT8W3DT5TED97509 | FORD | F-350 | 2026 |
| 1FT8W3BM1TED43393 | FORD | F-350 | 2026 |
| 1FMUK8DH8TGB06052 | FORD | EXPLORER | 2026 |
| 1FMJU1RG0TEA20685 | FORD | EXPEDITION | 2026 |
| 1FTFW3L54TKD16205 | FORD | F-150 | 2026 |
| 1FTEW2LPXTKD39270 | FORD | F-150 | 2026 |
| 1FT8W3BM6TED70802 | FORD | F-350 | 2026 |
| 3FMCR9GN6SRE37038 | FORD | BRONCO SPORT | 2025 |
| 1FTFW3L83RKF65310 | FORD | F-150 | 2024 |
| 1FTFW3LD0SFA53550 | FORD | F-150 | 2025 |
| 1FMDE7BHXSLB82110 | FORD | BRONCO | 2025 |
| 3FMCR9BN7TRE12805 | FORD | BRONCO SPORT | 2026 |
| 1FMUK8DH8TGA67429 | FORD | EXPLORER | 2026 |
| 1FTBW3X80TKA49471 | FORD | TRANSIT | 2026 |
| 1FMDE8BH5SLB81291 | FORD | BRONCO | 2025 |
| 1FMWK8JC9TGA72365 | FORD | EXPLORER | 2026 |
| 1FMWK8GC4TGA93888 | FORD | EXPLORER | 2026 |

Ford Credit

Notification of Disposition of Collateral

TO: Sky Chevrolet LLC 4/8/2026
7300 28th Ave
Newhall, IA 52315

From: / Secured Party
Ford Motor Credit Company LLC
One American Road
Dearborn, MI 48126

SUBJECT: Notice of Private Sale
Sky Chevrolet LLC

We will sell the collateral or property described on the enclosed schedule privately sometime after 4/18/2026.

You are entitled to an accounting of the unpaid indebtedness secured by the property that we intend to sell for a charge of $25.00. You may request an accounting by calling us at the telephone number listed below.

FORD MOTOR CREDIT COMPANY LLC
Brad Lavene
OM-DC
719-278-0103

BY: Brad Lavene

Enclosure: Vehicle List

DOC 331-22, FC 6/26/2018 Previous Editions must not be used.

| VIN | Make | Model | Year |
|---|---|---|---|
| 1FMDE7BH1SLA85832 | FORD | BRONCO | 2025 |
| 1FTER4HH1TLE02755 | FORD | RANGER | 2026 |
| 1FA6P8CF3T5404072 | FORD | MUSTANG | 2026 |
| 1FMDE8BH0SLB82607 | FORD | BRONCO | 2025 |
| 1FTER4PH5SLE77930 | FORD | RANGER | 2025 |
| 1FMUK8KH6TGA93904 | FORD | EXPLORER | 2026 |
| 1FMWK8GC3TGA11777 | FORD | EXPLORER | 2026 |
| 1FMUK8DHXTGA08625 | FORD | EXPLORER | 2026 |
| 1FMEE8BP9SLB81726 | FORD | BRONCO | 2025 |
| 1FMEE8BP1SLB71255 | FORD | BRONCO | 2025 |
| 1FMUK8JH1TGA93424 | FORD | EXPLORER | 2026 |
| 1FMUK8KH6TGA66024 | FORD | EXPLORER | 2026 |
| 1FTBR2C84TKA24306 | FORD | TRANSIT | 2026 |
| 3FTTW8SA4TRA31935 | FORD | MAVERICK | 2026 |
| 1FMJU1RG1TEA07203 | FORD | EXPEDITION | 2026 |
| 1FTER4LR4TLE03379 | FORD | RANGER | 2026 |
| 1FTER4KP3TLE05074 | FORD | RANGER | 2026 |
| 1FMDE8BH0SLB82476 | FORD | BRONCO | 2025 |
| 3FMCR9BN3SRF70525 | FORD | BRONCO SPORT | 2025 |
| 3FMCR9BN2SRF82262 | FORD | BRONCO SPORT | 2025 |
| 1FMUK8HH7TGA54326 | FORD | EXPLORER | 2026 |
| 3FTTW8J38TRA22349 | FORD | MAVERICK | 2026 |
| 1FTFW3L87RKF65665 | FORD | F-150 | 2024 |
| 1FT8W3DT5TED97509 | FORD | F-350 | 2026 |
| 1FT8W3BM1TED43393 | FORD | F-350 | 2026 |
| 1FMUK8DH8TGB06052 | FORD | EXPLORER | 2026 |
| 1FMJU1RG0TEA20685 | FORD | EXPEDITION | 2026 |
| 1FTFW3L54TKD16205 | FORD | F-150 | 2026 |
| 1FTEW2LPXTKD39270 | FORD | F-150 | 2026 |
| 1FT8W3BM6TED70802 | FORD | F-350 | 2026 |
| 3FMCR9GN6SRE37038 | FORD | BRONCO SPORT | 2025 |
| 1FTFW3L83RKF65310 | FORD | F-150 | 2024 |
| 1FTFW3LD0SFA53550 | FORD | F-150 | 2025 |
| 1FMDE7BHXSLB82110 | FORD | BRONCO | 2025 |
| 3FMCR9BN7TRE12805 | FORD | BRONCO SPORT | 2026 |
| 1FMUK8DH8TGA67429 | FORD | EXPLORER | 2026 |
| 1FTBW3X80TKA49471 | FORD | TRANSIT | 2026 |
| 1FMDE8BH5SLB81291 | FORD | BRONCO | 2025 |
| 1FMWK8JC9TGA72365 | FORD | EXPLORER | 2026 |
| 1FMWK8GC4TGA93888 | FORD | EXPLORER | 2026 |

Ford Credit

Notification of Disposition of Collateral

TO: Sky Chevrolet LLC
7300 28th Ave
Newhall, IA 52315

4/17/2026

From: / Secured Party
Ford Motor Credit Company LLC
One American Road
Dearborn, MI 48126

SUBJECT: Notice of Private Sale
Sky Chevrolet LLC

We will sell the collateral or property described on the enclosed schedule privately sometime after 4/27/2026.

You are entitled to an accounting of the unpaid indebtedness secured by the property that we intend to sell for a charge of $25.00. You may request an accounting by calling us at the telephone number listed below.

FORD MOTOR CREDIT COMPANY LLC
Brad Lavene
OM-DC
719-278-0103

BY: Brad Lavene

Enclosure: Vehicle List

DOC 331-22, FC 6/26/2018 Previous Editions must not be used.

| VIN | Vehicle |
|---|---|
| 1GTW7AFPXR1164797 | 2024 SAVANA |
| 1FTBR1Y86RKA70425 | 2024 TRANSIT |
| 1FTBR1Y83RKA41075 | 2024 TRANSIT |
| 1FTBR1Y88RKB03960 | 2024 TRANSIT |
| 1GTW7AFP5R1164724 | 2024 SAVANA |
| 1N4BL4DV0RN349100 | 2024 ALTIMA |
| 1G1ZD5STXRF108404 | 2024 MALIBU |
| 1FTEW1E46LFA41739 | 2020 F-150 |
| 3GKALVEG6RL224621 | 2024 TERRAIN |
| 7JRL12FL3RG280123 | 2024 S60 |
| 5J6RS4H49PL006060 | 2023 CR-V |
| KL4AMDSLXRB115255 | 2024 ENCORGE GX |
| KL4AMDSL6RB216258 | 2024 ENCORGE GX |
| 3VWC57BU1MM034696 | 2021 JETTA |
| KL79MRSL6SB062997 | 2025 TRAILBLAZER |
| 5N1BT3AA2PC794951 | 2023 ROGUE |
| KL79MPSL4SB049489 | 2025 TRAILBLAZER |
| WA1DECF39S1013486 | 2025 Q3 |
| WA1DECF31S1049950 | 2025 Q3 |
| 1FTEW1EP3PFC41087 | 2023 F-150 |
| 5NMJB3DE0RH298052 | 2024 TUCSON |
| 3GNCJLSB3GL122964 | 2016 TRAX |
| KL77LJE28RC205659 | 2024 TRAX |
| ZACNDFAN3S3A46837 | 2025 HORNET |
| 3C6RR7KG5NG302054 | 2022 1500 CLASSIC |
| 1GNSKNKD8RR234418 | 2024 TAHOE |
| 3FTTW8BA7SRA65575 | 2025 MAVERICK |

| | |
|---|---|
| 3FTTW8BA0SRA65563 | 2025 MAVERICK |
| 3FTTW8BA4SRA65534 | 2025 MAVERICK |
| 2C3CDXBG0NH259020 | 2022 CHARGER |
| 5XYK33AF9PG104821 | 2023 SPORTAGE |
| 3VVSX7B28PM312569 | 2023 TAOS |
| 5N1BT3BB6PC843463 | 2023 ROGUE |
| 3TYRX5GNXNT051015 | 2022 TACOMA |
| 1GCRKSE71DZ234734 | 2013 SILVERADO |
| 1GTV2UEC8FZ169441 | 2015 SIERRA |
| 3KPF34AD6LE135232 | 2020 FORTE |
| 2GCUKEED2S1198334 | 2025 SILVERADO |
| 1GTUUDEL9PZ171304 | 2023 SIERRA |
| 1C4HJXDN1LW239976 | 2020 WRANGLER UNLIMI |
| 3C6MR5AJ4HG558685 | 2017 2500 |
| 1C6RRFGG3RN215897 | 2024 1500 |
| 3KPF54ADXRE744682 | 2024 FORTE |
| 2GNALCEK8H1571833 | 2017 EQUINOX |
| 3TMMU4FN9BM030906 | 2011 TACOMA |
| 1C4HJXDG6NW223180 | 2022 WRANGLER UNLIMI |
| 1FTPW14V48KB28637 | 2008 F-150 |
| 1GCVKNEH1HZ359358 | 2017 SILVERADO |
| 3C6TRVCG0KE520516 | 2019 PROMASTER 2500 |
| 3C6UR5FL4PG646984 | 2023 2500 |
| 1FT7X2B61GEB22466 | 2016 F-250 |
| 1FT8W3BT3GEC39856 | 2016 F-350 |
| 1FMCU0H6XNUA20939 | 2022 ESCAPE |
| 3FTTW8BA4SRA30623 | 2025 MAVERICK |
| 3FMCR9GN6SRE36746 | 2025 BRONCO SPORT |

| | |
|---|---|
| 1FTER4FHXLLA41349 | 2020 RANGER |
| 3C63R3HL0RG155702 | 2024 3500 |
| 1GTU9DED5KZ119512 | 2019 SIERRA 1900 |
| 3VV2B7AX9MM052531 | 2021 TIGUAN |
| WA1LGAFE2FD015029 | 2015 Q7 |
| 1FMCU9J95GUC42672 | 2016 ESCAPE |
| LREKK5RX6HA026139 | 2017 CT6 |
| 1FMSK8FH9PGA29086 | 2023 EXPLORER |
| 1G1FB1RS9M0108730 | 2021 CAMARO |
| 2GNALFEK6C1313501 | 2012 EQUINOX |
| 1N6ED1EK2SN623472 | 2025 FRONTIER |
| KNADM4A31D6259831 | 2013 RIO |
| 1FDXX47R98EC65838 | 2008 F450 |
| 1FMCU0E19SUB11365 | 2025 ESCAPE |
| 1N4AL3AP6FC162995 | 2015 ALTIMA |
| 3C6UR5FL9MG661587 | 2021 1500 |
| 1FMCU9GN3SUB40168 | 2025 ESCAPE |
| KL77LHE22RC152630 | 2024 TRAX |
| 4S3BWAN62R3007876 | 2024 LEGACY |
| 1FTER4FH2MLD46376 | 2021 RANGER |
| 5Z62D0CT6AC418809 | 2010 EQUATOR |
| 3FADP4BJ1HM159019 | 2017 FIESTA |
| 1FMCU0E16SUA29982 | 2025 ESCAPE |
| 1FMCU0E11SUB15104 | 2025 ESCAPE |
| 1FMWK8GC0SGB16212 | 2025 EXPLORER |

Ford Credit

Notification of Disposition of Collateral

TO: Yelena Tovstanovsky 4/17/2026
4127 Easy Circle
Naperville, IL 60564

From: / Secured Party
Ford Motor Credit Company LLC
One American Road
Dearborn, MI 48126

SUBJECT: Notice of Private Sale
Sky Chevrolet LLC

We will sell the collateral or property described on the enclosed schedule privately sometime after 4/27/2026.

You are entitled to an accounting of the unpaid indebtedness secured by the property that we intend to sell for a charge of $25.00. You may request an accounting by calling us at the telephone number listed below.

FORD MOTOR CREDIT COMPANY LLC
Brad Lavene
OM-DC
719-278-0103

BY: Brad Lavene

Enclosure: Vehicle List

DOC 331-22, FC 6/26/2018 Previous Editions must not be used.

| VIN | Vehicle |
|---|---|
| 1GTW7AFPXR1164797 | 2024 SAVANA |
| 1FTBR1Y86RKA70425 | 2024 TRANSIT |
| 1FTBR1Y83RKA41075 | 2024 TRANSIT |
| 1FTBR1Y88RKB03960 | 2024 TRANSIT |
| 1GTW7AFP5R1164724 | 2024 SAVANA |
| 1N4BL4DV0RN349100 | 2024 ALTIMA |
| 1G1ZD5STXRF108404 | 2024 MALIBU |
| 1FTEW1E46LFA41739 | 2020 F-150 |
| 3GKALVEG6RL224621 | 2024 TERRAIN |
| 7JRL12FL3RG280123 | 2024 S60 |
| 5J6RS4H49PL006060 | 2023 CR-V |
| KL4AMDSLXRB115255 | 2024 ENCORGE GX |
| KL4AMDSL6RB216258 | 2024 ENCORGE GX |
| 3VWC57BU1MM034696 | 2021 JETTA |
| KL79MRSL6SB062997 | 2025 TRAILBLAZER |
| 5N1BT3AA2PC794951 | 2023 ROGUE |
| KL79MPSL4SB049489 | 2025 TRAILBLAZER |
| WA1DECF39S1013486 | 2025 Q3 |
| WA1DECF31S1049950 | 2025 Q3 |
| 1FTEW1EP3PFC41087 | 2023 F-150 |
| 5NMJB3DE0RH298052 | 2024 TUCSON |
| 3GNCJLSB3GL122964 | 2016 TRAX |
| KL77LJE28RC205659 | 2024 TRAX |
| ZACNDFAN3S3A46837 | 2025 HORNET |
| 3C6RR7KG5NG302054 | 2022 1500 CLASSIC |
| 1GNSKNKD8RR234418 | 2024 TAHOE |
| 3FTTW8BA7SRA65575 | 2025 MAVERICK |

| | |
|---|---|
| 3FTTW8BA0SRA65563 | 2025 MAVERICK |
| 3FTTW8BA4SRA65534 | 2025 MAVERICK |
| 2C3CDXBG0NH259020 | 2022 CHARGER |
| 5XYK33AF9PG104821 | 2023 SPORTAGE |
| 3VVSX7B28PM312569 | 2023 TAOS |
| 5N1BT3BB6PC843463 | 2023 ROGUE |
| 3TYRX5GNXNT051015 | 2022 TACOMA |
| 1GCRKSE71DZ234734 | 2013 SILVERADO |
| 1GTV2UEC8FZ169441 | 2015 SIERRA |
| 3KPF34AD6LE135232 | 2020 FORTE |
| 2GCUKEED2S1198334 | 2025 SILVERADO |
| 1GTUUDEL9PZ171304 | 2023 SIERRA |
| 1C4HJXDN1LW239976 | 2020 WRANGLER UNLIMI |
| 3C6MR5AJ4HG558685 | 2017 2500 |
| 1C6RRFGG3RN215897 | 2024 1500 |
| 3KPF54ADXRE744682 | 2024 FORTE |
| 2GNALCEK8H1571833 | 2017 EQUINOX |
| 3TMMU4FN9BM030906 | 2011 TACOMA |
| 1C4HJXDG6NW223180 | 2022 WRANGLER UNLIMI |
| 1FTPW14V48KB28637 | 2008 F-150 |
| 1GCVKNEH1HZ359358 | 2017 SILVERADO |
| 3C6TRVCG0KE520516 | 2019 PROMASTER 2500 |
| 3C6UR5FL4PG646984 | 2023 2500 |
| 1FT7X2B61GEB22466 | 2016 F-250 |
| 1FT8W3BT3GEC39856 | 2016 F-350 |
| 1FMCU0H6XNUA20939 | 2022 ESCAPE |
| 3FTTW8BA4SRA30623 | 2025 MAVERICK |
| 3FMCR9GN6SRE36746 | 2025 BRONCO SPORT |

| | |
|---|---|
| 1FTER4FHXLLA41349 | 2020 RANGER |
| 3C63R3HL0RG155702 | 2024 3500 |
| 1GTU9DED5KZ119512 | 2019 SIERRA 1900 |
| 3VV2B7AX9MM052531 | 2021 TIGUAN |
| WA1LGAFE2FD015029 | 2015 Q7 |
| 1FMCU9J95GUC42672 | 2016 ESCAPE |
| LREKK5RX6HA026139 | 2017 CT6 |
| 1FMSK8FH9PGA29086 | 2023 EXPLORER |
| 1G1FB1RS9M0108730 | 2021 CAMARO |
| 2GNALFEK6C1313501 | 2012 EQUINOX |
| 1N6ED1EK2SN623472 | 2025 FRONTIER |
| KNADM4A31D6259831 | 2013 RIO |
| 1FDXX47R98EC65838 | 2008 F450 |
| 1FMCU0E19SUB11365 | 2025 ESCAPE |
| 1N4AL3AP6FC162995 | 2015 ALTIMA |
| 3C6UR5FL9MG661587 | 2021 1500 |
| 1FMCU9GN3SUB40168 | 2025 ESCAPE |
| KL77LHE22RC152630 | 2024 TRAX |
| 4S3BWAN62R3007876 | 2024 LEGACY |
| 1FTER4FH2MLD46376 | 2021 RANGER |
| 5Z62D0CT6AC418809 | 2010 EQUATOR |
| 3FADP4BJ1HM159019 | 2017 FIESTA |
| 1FMCU0E16SUA29982 | 2025 ESCAPE |
| 1FMCU0E11SUB15104 | 2025 ESCAPE |
| 1FMWK8GC0SGB16212 | 2025 EXPLORER |